UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DENNZEL HOLDER,

                      Petitioner,

         - against -

JAMIE LAMANNA, Superintendent of
Greenhaven Correctional Facility,

                    Respondent.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-7431 (PKC)

PAMELA K. CHEN, United States District Judge:

Dennzel Holder, appearing *pro se*,[1] petitions this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his conviction for manslaughter in the first degree and criminal possession of a weapon in the second degree. For the reasons set forth below, the petition is denied in its entirety.

## BACKGROUND

### I.    Facts

On August 2, 2011, Petitioner met his girlfriend, Shatasia Meggett, at the intersection of Carroll Street and Nostrand Avenue, as requested by Meggett, who was in the midst of a verbal and physical dispute with several women in the area at the time.[2] (Trial Transcript ("Tr."), Dkt.

---

[1] Because Petitioner is *pro se*, the Court liberally construes his petition and interprets it "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and italics omitted). However, the Court notes that it "need not act as an advocate for" Petitioner. *Curry v. Kerik*, 163 F. Supp. 2d 232, 235 (S.D.N.Y. 2001) (quoting *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998)).

[2] Because Petitioner was convicted, the Court construes the facts in the light most favorable to Respondent. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."); *Cruz v. Colvin*, No. 17-CV-

10-4, at ECF[3] 738–39, 745–46.)  The dispute arose out of a conversation that Meggett and her two friends, Marissa Lowe and Faith Phillip, were having about hair.  (*Id.* at ECF 697–98, 742–43.) While the three women were talking, Sheniqua Cunningham and her boyfriend, Shawn Williams, were walking in the same area.  (*Id.*, Dkt. 10-5, at ECF 801–02; *see also id.*, Dkt. 10-4, at ECF 697.)  Cunningham believed that the women were making fun of her hair weave, and a fight ensued between the women.  (*Id.*, Dkt. 10-5, at ECF 803–05; *see also id.*, Dkt. 10-4, at ECF 698–700, 742–43.)  When Petitioner got to the scene, he initially talked to Williams (*id.*, Dkt. 10-5, at ECF 810–15; *id.*, Dkt. 10-4, at ECF 705, 746–47), but soon after took out a gun and fired approximately three shots at Williams, two of which hit him—one in his back and the other in his right thigh (*id.*, Dkt. 10-4, at ECF 625, 655, 749–50; *see also id.*, Dkt. 10-6, at ECF 1004).  Williams died as a result of the gunshot wound to his back.  (*Id.*, Dkt. 10-4, at ECF 633.)

## II.    Trial

Petitioner was arrested on August 10, 2011.  (*Id.*, Dkt. 10-3, at ECF 547–48.)  He was charged under Kings County Indictment Number 7227/2011 with murder in the second degree and criminal possession of a weapon in the second degree.  (State Post-Conviction Record ("R."), Dkt. 10-2, at ECF 278; Respondent's Affidavit ("Resp.'s Aff."), Dkt. 10, at ECF 46.)  Petitioner's jury trial lasted from January 30, 2014 to February 11, 2014 before Justice Alan D. Marrus, Supreme Court, Kings County.  (Tr., Dkt. 10-3, at ECF 453; *id.*, Dkt. 10-7, at ECF 1139.)  At the trial, the prosecution presented fifteen witnesses, including Lowe, Phillip, and Cunningham, all of whom

---

3757 (JFB), 2019 WL 3817136, at *12 (E.D.N.Y. Aug. 14, 2019) (citing, *inter alia*, *Jackson* and *Ponnapula*).

[3] Citations to "ECF" refer to the "PageID" number generated by the Court's CM/ECF docketing system and not the document's internal pagination.

testified to the events of August 2, 2011. (*See generally id.*, Dkt. 10-4, at ECF 694–735 (Lowe Testimony), ECF 738–95 (Phillip testimony); *id.*, Dkt. 10-5, at ECF 800–74 (Cunningham Testimony).) Other testimony was provided by Kevin Gardner (*see generally id.*, Dkt. 10-4, at ECF 652–94), Sherima Allen (*id.*, Dkt. 10-5, at ECF 877–929), and David Williams (*id.*, Dkt. 10-6, at ECF 993–1039). All three of these witnesses knew the victim, Shawn Williams, and were in the area when the shooting occurred. Williams's sister, Tiara Haynes, testified to her identification of her brother's body at the Kings County morgue on August 5, 2011. (*See id.*, Dkt. 10-3, at ECF 528–30.) Dr. Kathleen McCubbin testified to the injuries that led to Williams's death. (*Id.*, Dkt. 10-4, at ECF 617–45.) The prosecution also called several police officers, detectives, and technicians, who testified to the investigation of the shooting, including how the investigators obtained video footage of the Nostrand Avenue intersection, which showed Petitioner at the scene of the crime. (*See generally id.*, Dkt. 10-3, at ECF 475–501 (Detective Jupiter testimony), ECF 502–28 (Police Officer Alfonzo testimony), ECF 543–85 (Detective Margraf testimony), ECF 586–97 (Detective Weber testimony), ECF 597–607 (Detective Goldstein testimony); *id.*, Dkt. 10-6, at ECF 933–49 (Criminalist Joanne Lee testimony), ECF 950–91 (Firearms Technical Leader Stephen Deady testimony).)

On the second day of trial, the trial court was informed that Juror Number Four had "reported some problem that she has continuing to serve on the case." (*Id.*, Dkt. 10-3, at ECF 533.) In response, the trial court, with no objections, questioned Juror Number Four:

> THE COURT: I got a report that you are having some problem regarding being a juror in this case. Can you tell us what the problem is?
>
> JUROR NO. 4: It is making me very nervous. [. . .] And I am having difficulty sleeping and eating. I am having loss of appetite. Just coming here makes me very nervous.
>
> THE COURT: It is because of the nature of the case that you are feeling nervous?

3

JUROR NO. 4: I believe so.

THE COURT: Is there anything in particular that's making you nervous, anything that's happening?

JUROR NO. 4: No. It is just coming here. First I thought I could do it, and then on Thursday it was just very difficult. The first day coming here I just, I thought I would get over it, but during the weekend it got worse. I just felt very nervous.

THE COURT: Are you nervous right now?

JUROR NO. 4: Yes.

THE COURT: Is there anything that I can do that would help you in terms of making you more relaxed?

JUROR NO. 4: I don't know. I am sorry if I cause any disruption in the case, but it is just very difficult for me.

THE COURT: Do you think it is possible that you could try another day to see how it goes?

JUROR NO. 4: I don't know.

THE COURT: Is there something in particular you are concerned about?

JUROR NO. 4: I don't know. I guess I have never been in any setting like this. You know. Like I said, I thought I could do it, but it has just gotten very difficult for me.

THE COURT: And do you think there is any chance you could overcome that?

JUROR NO. 4: I don't know. Honestly, I don't know.

(*Id.* at ECF 534–35.) The prosecutor had no questions for Juror Number Four, but Petitioner's

counsel briefly questioned her:

MR. WATTS [Petitioner's Counsel]: The nervousness and difficulty that you are experiencing, do you think that would affect your ability to sit through the rest of the case, listen to the evidence, and be a fair and impartial juror? Or are you saying at this point you are incapable of doing that?

JUROR NO.4: I believe so, yes.

MR. WATTS: Believe what?

4

JUROR NO.4: I believe I wouldn't be able to participate.

MR. WATTS: You wouldn't be able to?

JUROR NO.4: Yes.

MR. WATTS: No further questions.

(*Id.* at ECF 536.) The trial court then dismissed Juror Number Four, over the objection of Petitioner's counsel, saying that "[w]ell, as much as I would like to keep her on the case, I think her unequivocal answers seem sincere that she is incapable of serving on this jury as a fair juror. And I think even your questions, Mr. Watts, nailed that down pretty clearly." (*Id*. at ECF 538–39.)

On the final day of trial, after the prosecution had rested its case, Petitioner's counsel made an application for Petitioner to stand in front of the jury in his t-shirt so that the members of the jury might observe Petitioner's tattoos, which the trial judge granted. (*Id.*, Dkt. 10-7, at ECF 1054.) Petitioner's counsel then detailed Petitioner's prominent tattoos, which include an eagle on his chest, various images from Petitioner's left shoulder to midway down his forearm, and other images from Petitioner's right shoulder to his elbow. (*Id.* at ECF 1055.) After this display, Petitioner rested his case. (*Id.* at ECF 1056.)

On February 11, 2014, Petitioner was convicted of the lesser-included offense of manslaughter in the first degree and criminal possession of a weapon in the second degree. (*Id.*, Dkt. 10-7, at ECF 1149–50.) The trial court sentenced Petitioner to 23 years of imprisonment for the manslaughter charge and three-and-one-half years for the criminal possession charge, to be served concurrently, followed by a five-year period of post-release supervision. (*Id.* at ECF 1177.)

### III. Procedural History

Petitioner appealed his conviction in the New York Appellate Division, Second Department ("Second Department"). (Resp.'s Aff., Dkt. 10, at ECF 57.) In his counseled brief, Petitioner raised two claims: (1) that the court erred in dismissing Juror Number Four on the second day of trial without properly establishing that she could not be an impartial juror, and (2) that Petitioner's 23-year prison term was excessive, in part given Petitioner's lack of criminal history and his young age at the time of the crime. (R., Dkt. 10-2, at ECF 276–97.) Petitioner also submitted a *pro se* supplemental brief in which he argued that: (1) the prosecutor impaired the development of the factual issues and the presentation of testimony, thereby jeopardizing the fairness of the trial, and (2) inappropriate comments made by the prosecutor deprived Petitioner of his due process rights. (*Id.* at ECF 329–46.) The Second Department affirmed Petitioner's judgment of conviction in its entirety. *People v. Holder*, 55 N.Y.S.3d 100 (N.Y. App. Div. 2017). Petitioner then sought leave to appeal to the New York Court of Appeals, which denied his request on September 7, 2017. *People v. Holder*, 89 N.E.3d 523 (N.Y. 2017). Petitioner then moved, pursuant to N.Y. Crim. Proc. Law § 440.10 ("Section 440 Motion"), to vacate the judgment of conviction on the theory that Petitioner was actually innocent. (R., Dkt. 10-2, at ECF 373–97.) The basis of Petitioner's claim was that he had prominent, visible tattoos at the time of the crime, but none of the eyewitnesses mentioned that the shooter had tattoos. (*Id.* at ECF 394.)

Petitioner timely filed the instant *habeas* petition on December 27, 2018. (*See generally* Petition, Dkt. 1.)[4] Shortly thereafter, the Court granted Petitioner's request for a stay so that he

---

[4] A petitioner must file an application for a writ of *habeas corpus* within one year of his conviction becoming final. 28 U.S.C. § 2244(d)(1)(A). A conviction becomes final when the "time to seek direct review in the United States Supreme Court by writ of certiorari expires," *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (internal quotation marks, brackets, and citation omitted), "that is, ninety days after the final determination by the state court," *Toxey v.*

could continue to pursue a post-judgment motion in state court. (Jan. 4, 2019 Docket Order.) On May 3, 2019, the Court lifted the stay but noted that Petitioner had likely not fully exhausted his Section 440 claims. (*See* May 3, 2019 Docket Order.) On July 2, 2019, the state trial court denied Petitioner's Section 440 Motion. (R., Dkt. 10-2, at ECF 446–51.) Petitioner did not seek leave to appeal the trial court's denial of his motion. (Resp.'s Aff., Dkt. 10, at ECF 63.)

## LEGAL STANDARD

Section 2254 provides that a *habeas corpus* application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002) (internal quotation marks and citation omitted). "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289, 301 (2013); *see also id.* at 301–02 (explaining that "the presumption that the federal claim was adjudicated on the merits

---

*N.Y. State Div. of Parole*, No. 14-CV-610 (JPO) (RLE), 2017 WL 10398212, at *4 (S.D.N.Y. Nov. 8, 2017). Here, Petitioner was denied leave to challenge the denial of his direct appeal on September 7, 2017; accordingly, the one-year statute of limitations for Petitioner's *habeas* petition began to run on December 6, 2017. U.S. Sup. Ct. R. 13(1). However, the statute of limitations was tolled when Petitioner filed a proper Section 440 Motion on December 5, 2018. (R., Dkt. 10-2, at ECF 397.) Petitioner filed the instant petition while the statute of limitations was still tolled, making his petition timely. (*Compare* R., Dkt. 10-2, at ECF 446–51 (denying Section 440 Motion on July 2, 2019), *with* Dkt. 1 (filing instant petition on December 27, 2018).)

may be rebutted" by either (1) "the habeas petitioner (for the purpose of showing that the claim should be considered by the federal court *de novo*)"; or (2) "the State (for the purpose of showing that the federal claim should be regarded as procedurally defaulted)").

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation marks and citation omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" Supreme Court cases, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (internal quotation marks and citation omitted).

A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (internal quotation marks and citation omitted). The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)); *see also Eze v. Senkowski*, 321 F.3d 110, 121 (2d Cir. 2003) (observing that, where a state court adjudicates a federal constitutional claim on the merits, "we must apply AEDPA deference"). "An unreasonable application occurs when 'the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

possibility for fairminded disagreement.'" *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017)

(quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not

required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed

*de novo.*'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459

F.3d 200, 203 (2d Cir. 2006)).

## DISCUSSION

Petitioner seeks *habeas* relief on three grounds: (1) a fair trial claim based on the trial

court's dismissal of the juror on the second day of trial; (2) a prosecutorial misconduct claim; and

(3) an actual innocence claim.

## I.     Petitioner's Fair Trial Claim Based on the Dismissal of Juror Number Four

Petitioner argues that he is entitled to *habeas* relief because the trial court erred in

dismissing Juror Number Four on the second day of trial.  (Petition, Dkt. 1, at 9.)  Citing the Fifth,

Sixth, and Fourteenth Amendments of the United States Constitution, as well as Article 1, Section

6 of the New York State Constitution, Petitioner argues that the dismissal of this sworn juror

"deprived [him] of his constitutional right to a particular jury in whose selection he had a voice."

(*Id.*)  Respondent argues that Petitioner's claim is based entirely on state law and therefore not

cognizable on federal *habeas* review.  (Respondent's Memorandum in Opposition ("Resp.'s Br."),

Dkt. 10, at 4–6 (asserting that Petitioner's claim relies solely on N.Y. Crim. Proc. Law § 270.35

and state case law).)  Though a claim based on a trial court's alleged misapplication of N.Y. Crim.

Proc. Law § 270.35 would not be cognizable on federal *habeas* review, *see Troche v. LaManna*,

No. 19-CV-2825 (BMC), 2019 WL 2619339, at *4 (E.D.N.Y. June 26, 2019) ("Although the

heading of [the petitioner's] brief point referenced 'the United States Constitution Article I [sic]

§2,' and he included a sentence that 'a defendant has a constitutional right to a trial by a particular jury chosen according to law . . . ,' the argument was based entirely on the alleged misapplication of N.Y. C.P.L. § 270.35 and state cases construing it. . . . [Such an] alleged violation is not cognizable on habeas corpus review."), the Court finds that Petitioner did fairly present a federal claim to the Second Department making it cognizable for review.

A *habeas* petitioner "fairly present[s]" a federal claim, even without citing "book and verse on the federal constitution" when "the legal basis of a claim made in state court is the 'substantive equivalent' of the habeas claim." *Wilson v. Heath*, 938 F. Supp. 2d 278, 288 (N.D.N.Y. 2013) (citing *Picard v. Connor*, 404 U.S. 270, 278 (1971)); *see also id.* ("This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature.") (quoting *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 192 (2d Cir. 1982) (*en banc*)). Specifically, a court looks at four factors to determine whether a *habeas* petitioner has fairly presented a federal claim: (1) "reliance on pertinent federal cases employing constitutional analysis," (2) "reliance on state cases employing constitutional analysis in like fact situations," (3) "assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution," and (4) "allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* at 288 (quoting *Daye*, 696 F.2d at 194).

Here, though Petitioner's state court appellate brief did not cite to any federal case law (*see* R., Dkt. 10-2, at ECF 289–92), "[a]llegations of improper juror dismissal evoke the Sixth Amendment right to an impartial jury and the Fourteenth Amendment right to due process." *Baston v. Artus*, No. 08-CV-3425 (RJD), 2010 WL 5067696, at *2 n.1 (E.D.N.Y. Dec. 6, 2010) (internal quotation marks and citations omitted). Therefore, the Court finds that Petitioner did fairly present his federal constitutional claim to the Second Department, entitling him to a review

of that claim on the merits. *See, e.g.*, *Johnson v. Conway*, No. 07-CV-445 (LEK) (DRH), 2008 WL 2405709, at *6 (N.D.N.Y. June 11, 2008) (finding the petitioner's juror disqualification claim was fairly presented because the legal basis of the claim was the "substantial equivalent of his habeas claim," even though the petitioner did not cite to any federal caselaw) (internal quotation marks omitted); *Carrasco v. David*, No. 00-CIV-5693 (LTS) (JCF), 2002 WL 1205750, at *5 (S.D.N.Y. June 4, 2002) (finding that factual "[a]llegations of improper juror dismissal [that] evoke[d] the Sixth Amendment right to an impartial jury" were sufficient to allow for federal *habeas* review). In reviewing Petitioner's claim on the merits, which the Second Department rejected,[5] *see Holder*, 55 N.Y.S.3d at 101–02, the Court applies AEDPA deference. *See* 28 U.S.C. § 2254(d); *Eze*, 321 F.3d at 121.

On its merits, Petitioner's claim as to Juror Number Four fails. "Decisions to dismiss jurors are reversed only in cases of 'clear abuse' of the court's discretion." *Cabassa v. Filion*, No. 03-CV-2920 (DC), 2004 WL 1367503, at *7 (S.D.N.Y. June 16, 2004) (quoting *United States v. Nelson*, 277 F.3d 164, 202 (2d Cir. 2002)); *see also United States v. Rosario*, 111 F.3d 293, 299 (2d Cir. 1997) ("[A] trial judge is vested with very broad discretion to deal with problems that arise in connection with jury deliberations or a juror's fitness to deliberate."). The "substitution of an alternate juror for reasonable cause is the prerogative of the court and does not require the

---

[5] Though the Second Department's decision did not specifically reference federal law, the Court finds that its decision is nonetheless entitled to AEDPA deference. "The Second Circuit has held that a state court can be said to have determined a claim on the merits even if, as here, 'the state court does not explicitly refer to either the federal claim or to relevant federal case law,' if the state court 'disposes of the case on the merits' and 'reduces its disposition to judgment.'" *Bellezza v. Fischer*, No. 01-CV-1445 (JBW), 2003 WL 21854749, at *13 (E.D.N.Y. Aug. 6, 2003) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)). Here, the Second Department rejected Petitioner's fair trial claim, noting that the trial court "conducted a sufficiently probing and tactful inquiry of a particular sworn juror, correctly determined that the juror was grossly unqualified to serve, and properly discharged the juror." *Holder*, 55 N.Y.S.3d at 102. Such a decision constitutes a decision on the merits. *See Bellezza*, 2003 WL 21854749, at *13.

consent of any party." *Shepard v. Artuz*, No. 99-CV-1912 (DC), 2000 WL 423519, at *5 (S.D.N.Y. Apr. 19, 2000) (quoting *United States v. Millar*, 79 F.3d 338, 342 (2d Cir. 1996)). Furthermore, "a trial court's finding that a sworn juror was not fit for further service is a factual determination that is entitled to a presumption of correctness unless unsupported by the record." *Hughes v. Phillips*, 457 F. Supp. 2d 343, 368 (S.D.N.Y. 2006) (citing, *inter alia*, *Marshall v. Lonberger*, 459 U.S. 422 (1983)).

The trial court properly exercised its discretion in dismissing Juror Number Four. Under N.Y. Crim. Proc. Law § 270.35, a trial court must discharge a juror "[i]f at any time after the trial jury has been sworn and before the rendition of its verdict, a juror is unable to continue serving by reason of illness or other incapacity . . . ." N.Y. Crim. Proc. Law § 270.35(1). Petitioner argues that the trial court erred by "immediately remov[ing]" the juror even though the juror "merely complained of a vague feeling of nervousness . . . [and] did not say that she could not be fair and impartial . . . ." (Petition, Dkt. 1, at 9; *see also id.* at 10 (arguing that, "[b]y immediately discharging the juror based on her equivocal responses, the court violated [P]etitioner's constitutional right").) Petitioner's argument is unavailing. After learning that the juror had reported a problem with continuing her service, the trial court questioned the juror and allowed both the prosecution and Petitioner's counsel to question her as well. After questioning and observing the Juror, the trial court dismissed her, stating

> I have [been] about around here long enough . . . where a juror seems willing and enthusiastic when selected, but something happens afterwards when the reality sets in they have now been selected, that all of a sudden they now have a problem serving on a case. I think that's what's happened with this woman. She is not really telling us the full details of what's going on in her mind. But she is obviously worried about something. And given the fact that she is so nervous and feels she can't continue to serve on the case, I don't see any choice but discharging her at this time.

(Tr., Dkt. 10-3, at ECF 538.) This decision is entitled to a presumption of correctness "unless unsupported by the record." *Hughes*, 457 F. Supp. 2d at 368. Here, the trial court's decision is amply supported by the record, especially in light of the fact that it is "[t]he trial judge who was in a position to observe the demeanor of the juror." *McShall v. Henderson*, 526 F. Supp. 158, 162 (S.D.N.Y. 1981); *cf. United States v. Samet*, 207 F. Supp. 2d 269, 276–77 (S.D.N.Y. 2002) (noting that, under Federal Rule of Criminal Procedure 23(b), a judge may dismiss a juror who becomes nervous and upset). Furthermore, given that the trial court appropriately followed the procedure required by N.Y. Crim. Proc. Law § 270.35 by "conduct[ing] a sufficiently probing and tactful inquiry of a particular sworn juror, correctly determin[ing] that the juror was grossly unqualified to serve, and properly discharge[ing] the juror," *Holder*, 55 N.Y.S.3d at 102, the trial court's actions plainly do not constitute an abuse of discretion under that statute. *Wheeler v. Phillips*, No. 05-CV-4399 (JFB), 2006 WL 2357973, at *6 (E.D.N.Y. Aug. 15, 2006) (finding that a petitioner's Sixth Amendment rights were not violated when, pursuant to N.Y. Crim. Proc. Law § 270.35, "[t]he trial court cited several reasons for the dismissal of each juror, none of which constituted an abuse of discretion under the applicable statute").

In any event, even assuming *arguendo* that the trial court erred by dismissing Juror Number Four, Petitioner would still not be entitled to relief because he has not demonstrated that he was prejudiced by the dismissal of the juror. "[N]o constitutional claim can arise from the substitution of one juror for another unless the petitioner can demonstrate that the replacement juror was biased or otherwise unfit to serve." *Council v. Capra*, No. 14-CV-1849 (PKC) (MHD), 2015 WL 13746663, at *14 (S.D.N.Y. Sept. 24, 2015), *report and recommendation adopted*, No. 14-CV-1849 (PKC), 2016 WL 165022 (S.D.N.Y. Jan. 14, 2016); *Johnson v. Artuz*, No. 00-CV-6106 (MAT), 2006 WL 1144513, at *7 (W.D.N.Y. May 1, 2006) (rejecting a petitioner's claim when

he "failed to establish that the substitution resulted in any prejudicial impact on the outcome of his trial"). Here, Petitioner does not cite to any evidence to suggest that the trial court's decision to dismiss Juror Number Four affected the outcome of his trial or that the juror who replaced the dismissed juror was biased or otherwise unfit to serve. "Since [Petitioner] has in no way established the partiality of the jury that ultimately convicted him, he may not successfully claim deprivation of his sixth amendment or due process rights." *Lleshi v. LaClair*, No. 13-CV-5874 (VB) (JCM), 2017 WL 1319798, at *12 (S.D.N.Y. Jan. 26, 2017), *report and recommendation adopted*, No. 13-CV-5874 (VB), 2017 WL 1319927 (S.D.N.Y. Apr. 7, 2017) (quoting *United States v. Towne*, 870 F.2d 880, 885 (2d Cir. 1989)).

Accordingly, the Second Department's rejection of Petitioner's fair trial claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state trial proceedings. Petitioner's request for *habeas* relief on this ground is therefore denied.

## II. Petitioner's Prosecutorial Misconduct Claim

Petitioner also argues that he is entitled to *habeas* relief because of the alleged impropriety of certain comments made by the prosecutor during summation. He argues that "the [p]rosecutor committed misconduct and violated Petitioner's right to a fair trial" (Petition, Dkt. 1, at 11) by (1) stating that Petitioner was "guilty" based on the witnesses' testimony; (2) making disparaging statements about the defense's theory that there were holes in the witnesses' testimony; (3) becoming an "unsworn expert witness" by providing his personal opinion on video evidence; and (4) vouching for the credibility of the state's witnesses (*id.* at 11–12; *see also id.* at 13 (arguing

that the prosecutor "engaged in vouching, burden shifting and other impermissible tactics" and that he "operated with the air of immunity")).

"[A] federal habeas court will not review a claim rejected by the state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Beard v. Kindler*, 558 U.S. 53, 55 (2009) (internal quotation marks and brackets omitted). On direct appeal, the Second Department found Petitioner's prosecutorial misconduct claims were "unpreserved for appellate review." *Holder*, 55 N.Y.S.3d at 102. The Second Department based this ruling on New York's "contemporaneous objection rule," which provides that an objection is preserved if the objecting party "(1) made his or her position regarding the ruling known to the trial court; (2) made a protest, and the trial court 'expressly decided the question raised on appeal'; or (3) 'without success . . . either expressly or impliedly sought or requested a particular ruling.'" *Downs v. Lape*, 657 F.3d 97, 102–03 (2d Cir. 2011) (alteration in original) (quoting N.Y. Crim. Proc. Law § 470.05(2)).

The Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule" and has observed "that the rule constitute[s] an independent ground for disposing of" a petitioner's claim on *habeas* review. *Downs*, 657 F.3d at 104; *see also Garcia v. Lewis*, 188 F.3d 71, 78 (2d Cir. 1999) ("[I]f a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with a contemporaneous objection rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review.") (internal quotation marks, alterations, and citation omitted). The Court therefore declines to consider Petitioner's claim regarding the remarks made during the prosecutor's summation, given that the Second Department found that this claim was not preserved for appellate review. *See Brunson v.*

*Tracy*, 378 F. Supp. 2d 100, 106 (E.D.N.Y. 2005) (holding that the petitioner's prosecutorial misconduct claim did not provide a basis for *habeas* review when the Second Department had found that the petitioner had failed to preserve the claim for appeal); *see also Cromwell v. Smith*, No. 13-CV-29 (KBF), 2014 WL 1280287, at *9 (S.D.N.Y. Mar. 25, 2014) ("[B]ecause there is no dispute that petitioner failed to object to the evidence [at trial], the contemporaneous objection rule provides an adequate and independent ground to support the Appellate Division's rejection of the petitioner's claims.").[6]

Moreover, even assuming *arguendo* that Petitioner's claim was preserved, his claim would nonetheless fail on the merits. The Second Department, despite finding the claim unpreserved, also addressed and rejected the merits of Petitioner's claim. This rejection is therefore entitled to AEDPA deference. *See* 28 U.S.C. § 2254(d); *Eze*, 321 F.3d at 121.

"A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone in an otherwise fair proceeding." *McManus v. Vann*, No. 18-CV-3800 (JFB), 2019 WL 3767538, at *8 (E.D.N.Y. Aug. 9, 2019) (quoting *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991)). "It is 'a rare case' in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required." *United States v. Newton*, 369 F.3d 659, 680 (2d Cir. 2004) (quoting *United States v. Rodriguez*, 968 F.2d 130, 142 (2d Cir. 1992)). "A claim of prosecutorial misconduct during summation requires a court to consider 'whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a

---

[6] Petitioner "may avoid this procedural default only by showing cause and actual prejudice or by demonstrating that the failure to consider his speedy trial claim will result in a miscarriage of justice because he is actually innocent." *Douglas v. Hollins*, No. 00-CV-7928 (MBM), 2004 WL 187130, at *7 (S.D.N.Y. Jan. 29, 2004) (citing *Coleman v. Thompson*, 501 U.S. 722, 748 (1991)). However, Petitioner has not provided any evidence to support a finding of cause and, for the reasons discussed *infra*, Petitioner has also failed to show that he is actually innocent. Accordingly, Petitioner is not able to defeat this procedural bar.

denial of due process.'" *Torres v. Racette*, No. 11-CV-1647 (PKC), 2018 WL 4762246, at *6 (E.D.N.Y. Oct. 2, 2018) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Therefore, the appropriate standard of review for a *habeas* petition involving prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990) (quoting *Darden*, 477 U.S. at 181) (internal quotation marks and citation omitted). "For prosecutorial misconduct to amount to constitutional error, it is not enough that the prosecutor's remarks were undesirable or even universally condemned. Instead, the prosecutor's comments must represent egregious misconduct." *McManus*, 2019 WL 3767538, at *8 (internal quotation marks and citations omitted). Furthermore, "a petitioner must show that he 'suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at *9 (quoting *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994)).

Petitioner's arguments that the prosecution's remarks during summation violated his right to a fair trial are unavailing. Petitioner asserts that the prosecution "disparaged the defense's proposition that there were holes in the witnesses' testimony" (Petition, Dkt. 1, at 11) and "improperly vouched for the credibility [of] the People's witnesses by arguing they had no reason to lie" (*id.* at 11–12), but "[p]rosecutors are permitted broad latitude during summation and are permitted to respond to arguments by the defense 'impugning the integrity of [their] case,'" *Torres*, 2018 WL 4762246, at *6 (second brackets in original) (quoting *United States v. Bautista*, 23 F.3d 726, 732 (2d Cir. 1994)). "[W]hile the prosecution may not vouch for the credibility of its witnesses, the government is allowed to respond to an argument that impugns its integrity or the integrity of its case[.]" *Jones v. Annucci*, 124 F. Supp. 3d 103, 126 (N.D.N.Y. 2015) (quoting *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005)); *see also id.* ("[W]hen the defense counsel

have attacked the prosecutor's credibility or the credibility of the government agents, the prosecutor is entitled to reply with rebutting language suitable to the occasion.") (quoting *Carr*, 424 F.3d at 227).

In summation, Petitioner's counsel argued that the testimony of the prosecution's witnesses was "inaccurate" (Tr., Dkt. 10-7, at ECF 1069) and "suspect" (*id.* at ECF 1070), and that, as a result, the jury "cannot trust [the] testimony" (*id.*; *see also id.* at ECF 1085 ("I am telling you, the Judge will tell you, if a witness has testified falsely, there is some version that you can't accept, and there is another version you can. His version is totally off.")). The prosecution's remarks were in response to these arguments. For example, Petitioner's counsel argued that "Cunningham's version of what happened . . . is suspect" (Tr., Dkt. 10-7, at ECF 1070) and "[l]ook at [Lowe's] testimony. Her version is credible. Her version appears to be the only person that is believable," (*id.* at ECF 1087"). In response, the prosecution argued that

> [j]ust because a witness may have some allegiance to [the victim] does not mean he has a bias against the [Petitioner]. And there is actually no testimony in this case that would suggest to you that anybody came in here and said, "You know what, I want to get that guy. That guy did something to my brother or to my car." There is no testimony like that whatsoever. The witnesses came in and told you what they saw. The fact that they saw different things or remembered [a] different number of shots, does not mean that they were not seeing what they saw.

(*Id.* at ECF 1109–10; *see also id.* at ECF 1100 ("Now defense counsel wants you to believe that somehow everybody who has a bias or supports Shawn Williams somehow has a bias against [Petitioner]. That does not logically flow.").) The prosecution's comments plainly were not improper and constituted a fair response to defense counsel's arguments seeking to discredit the prosecution's witnesses. *See Ayala v. Ercole*, No. 06-CV-1747 (JFB), 2007 WL 1135560, at *17 (E.D.N.Y. Apr. 17, 2007) ("[A] prosecutor is permitted to respond in an appropriate manner to attacks on the government's case by defense counsel during his summation, including attacks on the credibility of government witnesses."); *see also Brunson*, 378 F. Supp. 2d at 108 ("The

Supreme Court has held that 'if the prosecutor's remarks were "invited," and did no more than respond substantially in order to "right the scale," such comments [do] not warrant reversing a conviction.'" (brackets in original) (quoting *United States v. Young*, 470 U.S. 1, 12–13 (1985)).

Petitioner also argues that the prosecutor acted as an "unsworn expert witness" and improperly offered his personal opinions on the evidence. (Petition, Dkt. 1, at 11–12.) "The law on this point is well-settled: It is improper for a prosecutor to interject personal beliefs into a summation." *Marshall v. Artus*, No. 04-CV-881 (GLS) (VEB), 2007 WL 2406958, at *10 (N.D.N.Y. Aug. 21, 2007) (citing *Young*, 470 U.S. at 8). However, such "statements during summation are permissible if they constitute a fair comment on the evidence at trial and reasonable inference therefrom[.]" *Roman v. Filion*, No. 04-CV-8022 (KMW) (AJP), 2005 WL 1383167, at *18 (S.D.N.Y. June 10, 2005) (internal quotation marks and citation omitted).

Petitioner argues that the prosecution's statement that Petitioner was "guilty" is improper. (Petition, Dkt. 1, at 11.) However, the prosecution's statement, which was that "[w]e have one gun, one shooter, and one verdict. Guilty beyond a reasonable doubt. All the evidence proves that" (Tr., Dkt. 10-7, at ECF 1098), was not improper but, rather, a permissible comment and argument regarding the evidence presented at trial. Likewise, the prosecution's statement that "[h]e did it" (*id.* at ECF 1112) is not improper because the statement came at the end of an explanation of the identification evidence presented to the jury (*id.* ("And at that point each of the witnesses who have come into this courtroom, six of them, have come into this courtroom and, as I said, put the gun in the defendant's hand. In various degrees of identification. Identification is not the issue here. He did it.")). Again, this was argument, urging the jury to interpret the evidence in a particular way. "A prosecutor does not commit misconduct if he merely presents 'one view of the evidence, which the jury could accept or reject based on its own knowledge and judgment

of the entire record.'" *Dunn v. Sears*, 561 F. Supp. 2d 444, 456 (S.D.N.Y. 2008) (quoting *United States v. Hawkins*, 125 F. App'x 364, 366 (2d Cir. 2005)).

Petitioner's objection to the prosecution's statement regarding the video evidence is also unavailing. During summation, the prosecutor said "[l]ook at where his right arm is right there. It looks as though he is holding something. Maybe when you are running with a gun [it] doesn't stay so securely in your waistband. That's what I infer from that picture what is going on." (Tr., Dkt. 10-7, at ECF 1101.) A "prosecutor's comments, such as stating 'I think you can conclude' in reference to the evidence, [are] insufficient to demonstrate prosecutorial misconduct because they 'clearly communicate[ ] nothing more than a comment on the evidence.'" *McManus*, 2019 WL 3767538, at *13 (brackets in original) (quoting *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995)). Therefore, here, the prosecutor did not step outside of the appropriate bounds of behavior in making these comments, as he was merely properly directing the jurors to evaluate and draw inferences from the evidence. *See Allan v. Conway*, No. 08-CV-4894 (JFB), 2012 WL 70839, at *21 (E.D.N.Y. Jan. 10, 2012) ("The prosecution and the defense are generally entitled to wide latitude during closing arguments, so long as they do not misstate the evidence.") (quoting *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998)).[7]

Moreover, even if any or all of the comments Petitioner identified were improper, he would still not be entitled to *habeas* relief because he has not demonstrated actual prejudice. A petitioner fails to show actual prejudice when "the prosecution produced ample evidence by which reasonable jurors could have found [the petitioner] guilty beyond a reasonable doubt." *Sheard v.*

---

[7] Even to the extent that the prosecutor's statement, "That's what I infer from that picture what is going on" (Tr., Dkt. 10-7, at ECF 1101), might be viewed as improper—in that a more accepted formulation would have been, "I submit that you can infer from the picture that that is what is going on"—such error was far from "egregious," *McManus*, 2019 WL 3767538, at *8, and, as discussed *infra*, was clearly harmless.

*Lee*, No. 18-CV-2125 (ALC) (RWL), 2019 WL 5847151, at *8 (S.D.N.Y. Oct. 7, 2019), *report and recommendation adopted*, No. 18-CV-2125 (ALC), 2019 WL 5810306 (S.D.N.Y. Nov. 6, 2019); *see also Dunn*, 561 F. Supp. 2d at 458 ("If there is clear evidence of guilt, prosecutorial misconduct on summation is considered harmless error."). Here, the evidence against Petitioner is overwhelming. It included the testimony of six eyewitnesses and a video showing the incident in question. Any potential prejudice against Petitioner was further mitigated "by the brevity of the prosecutor's [allegedly improper] statements," *Sheard*, 2019 WL 5847151, at *9, and by the fact that "the trial court gave the standard instruction . . . that closing arguments are not evidence, and that it was up to the jury, not the lawyers, to draw whatever inferences they though[t] were reasonable," *Hernandez v. Superintendent of Clinton Corr. Facility*, No. 19-CV-5832 (BMC), 2019 WL 6716738, at *7 (E.D.N.Y. Dec. 10, 2019); *see also Gaviria v. Lee*, No. 11-CV-1683 (RJD), 2014 WL 1653252, at *3 (E.D.N.Y. Apr. 23, 2014) ("The record [] shows that the trial court instructed the jury on the presumption of innocence at the voir dire stage, at the commencement of trial, and again in the instructions given just prior to the deliberations. A jury is presumed to follow its instructions.") (internal quotation marks and citation omitted). Therefore, even if any of the prosecution's comments were improper, Petitioner has not demonstrated actual prejudice, as is required to prevail on his claim.

In sum, the prosecution's statements at summation were neither improper nor so prejudicial as to deny Petitioner his right to a fair trial. Accordingly, the Court finds that the Second Department's rejection of Petitioner's claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state trial proceedings. *See, e.g.*, *Washington*, 876 F.3d at 403. Therefore, *habeas* relief on this ground is denied.

### III.    Petitioner's Actual Innocence Claim

Petitioner claims actual innocence, arguing that "[t]he man who shot Shawn Williams to death . . . has no tattoos" and that, if Petitioner had "been the shooter, all the witness[es] would have identified the fact that he has visible tattoos." (Petition, Dkt. 1, at 15.)  Petitioner first raised his actual innocence claim in his Section 440 Motion before Kings County Supreme Court. (*Id.* at 2–3.)  That court denied Petitioner's motion, pursuant to N. Y. Crim. Proc. Law § 440.10(2)(c), because "[Petitioner's] actual innocence claim is *not* based on newly discovered evidence, but on evidence that was already presented to and rejected in the trial court." (R., Dkt. 10-2, at ECF 449 (emphasis in original).)  The trial court also rejected the merits of Petitioner's claim, noting that the evidence presented by Petitioner, *i.e.*, Facebook pictures of his tattoos that pre-dated the incident, was not enough to establish his innocence. (*Id.* at ECF 451.)

As discussed *supra,* "[a] federal habeas court may not review a state court decision that rests on a state law ground 'independent of the federal question and adequate to support the judgment.'" *Hudyih v. Smith*, 684 F. App'x 99, 100 (2d Cir. 2017) (summary order) (quoting *Cone v. Bell*, 556 U.S. 449, 465 (2009)).  The state court's reliance on N.Y. Crim. Proc. Law § 440.10(2)(c) is an "adequate and independent" state law ground that forecloses federal *habeas* review. *See Ramirez v. Attorney Gen. of State of N.Y.*, 280 F.3d 87, 96 (2d Cir. 2001) (holding that denial of a motion pursuant to N.Y.C.P.L. § 440.10(2)(c) is a denial pursuant to state law that operates as a procedural bar); *accord Coleman*, 501 U.S. at 729–30.  Furthermore, "[e]ven where the state court has ruled on the merits of a federal claim 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default."

*Murden v. Artuz*, 497 F.3d 178, 191 (2d Cir. 2007) (quoting *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005)).  Accordingly, Petitioner's actual innocence claim is procedurally barred.[8]

However, even assuming Petitioner's actual innocence claim is not procedurally barred, it nonetheless fails.  "A credible actual innocence claim 'may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief.'" *Washington v. Artus*, No. 07-CV-7769 (DAB), 2014 WL 774970, at *4 (S.D.N.Y. Feb. 25, 2014) (internal ellipsis omitted) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)).  Therefore, an "actual innocence claim plays a 'procedural, not substantive' role in [a *habeas*] case." *Hyman v. Brown*, 927 F.3d 639, 655 (2d Cir. 2019) (quoting *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012)).  "[A] claim of actual innocence must be both 'credible' and 'compelling.'" *Id.* (quoting *House v. Bell*, 547 U.S 518, 521, 538 (2006)); *see also Amin v. Hulihan*, No. 10-CV-2293 (PKC), 2016 WL 6068128, at *5 n.6 (E.D.N.Y. Oct. 13, 2016) ("A claim of actual innocence must be supported by 'new reliable evidence' and is therefore 'rarely successful.'") (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).  "For the claim to be 'credible,' it must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Rivas*, 687 F.3d at 541 (quoting *Schlup*, 513 U.S at 324).  "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any

_____

[8] As stated *supra* n.6, Petitioner "may avoid this procedural default only by showing cause and actual prejudice or by demonstrating that the failure to consider his . . . claim will result in a miscarriage of justice because he is actually innocent." *Douglas*, 2004 WL 187130, at *7 (citing *Coleman*, 501 U.S. at 748).  However, Petitioner has not provided any evidence to support a finding of cause and, for the reasons discussed *infra*, Petitioner has also failed to show that he is actually innocent.  Accordingly, Petitioner is not able to defeat this procedural bar.

reasonable juror would have reasonable doubt.'" *Id.* (quoting *House*, 547 U.S. at 538); *see also McQuiggin*, 569 U.S. at 385, 395, 399.  In support of his claim, Petitioner provides pictures from Facebook that provide "conclusive proof that [Petitioner] had these tattoos prior to [the date of the shooting]."  (Petition, Dkt. 1, at 15.)  Kings County Supreme Court considered this claim and denied it on the merits.  (R., Dkt. 10-2, at ECF 446–51.)  Accordingly, that court's decision is entitled to AEDPA deference.  *See* 28 U.S.C. § 2254(d); *Eze*, 321 F.3d at 121.

Petitioner's claim is neither credible nor compelling.  There is a "limited . . . type of evidence on which an actual innocence claim may be based . . . in order to take advantage of the gateway[,]" which includes "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004) (internal quotation marks omitted) (citing *Schlup*, 513 U.S. at 324).  The "new evidence" that Petitioner's claim relies on, *i.e.*, the Facebook photos showing that his tattoos predated Williams's murder, is therefore not the type of evidence that supports an actual innocence claim.  Moreover, Petitioner's evidence is not new.  First, the fact that the Facebook photos had timestamps predating the shooting (Petition, Dkt. 1, at 14) suggests that they were available at the time of Petitioner's trial. *Colon v. Superintendent*, No. 12-CV-321 (MAD) (ATB), 2013 WL 1785531, at *7 (N.D.N.Y. Apr. 25, 2013) ("If the exculpatory statements were available to the hearing officer at the time of the hearing, they are not 'new evidence' for the purposes of an actual innocence claim.") (quoting *Rivas*, 687 F.3d at 544).  Second, the Facebook photos merely corroborate a theory that was presented, and rejected, at Petitioner's trial.  Indeed, the tattoo theory employed by Petitioner formed one of the core elements of his trial strategy.  For example, Petitioner's counsel cross-examined several witnesses, including Gardner, Lowe, Phillip, Cunningham, and Allen, who all testified that they did not recall seeing any tattoos on the shooter.

(Tr., Dkt. 10-4, at ECF 671–72 (Gardner cross-examination); *id.* at ECF 727 (Lowe cross-examination); *id.* at ECF 787 (Phillip cross-examination); *id.*, Dkt. 10-5, at ECF 858–59 (Cunningham cross-examination); *id.* at ECF 927–28 (Allen cross-examination).)  Petitioner was also permitted by the trial court to display his tattoos, in person, to the jury.  (*Id.*, Dkt. 10-7, at ECF 1054.)  Relying on this evidence, in summation, Petitioner's counsel argued that "when I asked every witness, 'Did you notice the tattoos on his body?' [t]hey got offended.  'Well, I don't look at that kind of thing.  I wasn't looking for that.'  How can you possibly miss that?  How can you?" (*Id.* at ECF 1068–69.)  Evidence that supports a theory or facts already presented at trial is not "new evidence" because the evidence needed to support a claim of actual innocence must be "evidence not heard by the jury."  *Rivas*, 687 F.3d at 543.

Petitioner's actual innocence claim also fails because the evidence is not sufficiently compelling.  *Rivas*, 687 F.3d at 541 (noting that a claim of actual innocence "must be both 'credible' and 'compelling'") (quoting *House*, 547 U.S. at 521, 538).  New evidence that merely conflicts with the evidence presented at trial is insufficient to demonstrate that "no reasonable juror," presented with this new evidence, "would find [the petitioner] guilty beyond a reasonable doubt[.]"  *Rivas*, 687 F.3d at 541; *see also DiMattina v. United States*, 949 F. Supp. 2d 387, 402 (E.D.N.Y. 2013) ("'Newly discovered' affidavits and phone records offering what is claimed to be a conflicting narrative to the one presented by [the victim] at trial do not sufficiently support a finding that the consistent testimony of [the victim and other corroborating witnesses] should be disregarded and that [the petitioner] is actually innocent."); *Rosario v. Ercole*, 582 F. Supp. 2d 541, 559–60 (S.D.N.Y. 2008) (finding that newly discovered alibi testimony was not credible because, *inter alia*, the new evidence just created "a credibility contest" between the prosecution's case at trial and the newly discovered evidence), *aff'd*, 601 F.3d 118 (2d Cir. 2010).  Here,

Petitioner's evidence supports a narrative that someone other than Petitioner murdered Williams, which contradicts the narrative offered by the state at trial. "The jury had the opportunity to consider the various inconsistencies" in the evidence and "nevertheless, they rendered a guilty verdict." *Diaz v. Bellnier*, No. 08-CV-4009 (MKB), 2012 WL 4447357, at *8 (E.D.N.Y. Sept. 24, 2012); *cf. Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 362 (N.D.N.Y. 2013) ("Here, as in many cases, the jury's decision was largely a matter of choosing whether to believe [Petitioner's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence.") (internal quotation marks and citation omitted). Petitioner's new evidence, therefore, does not support the conclusion that a reasonable juror would not have convicted him based on this purported new evidence. Accordingly, given that Petitioner has not shown that his newly discovered evidence is sufficiently credible and compelling, his actual innocence claim fails.

Second, even assuming *arguendo* that Plaintiff's evidence was sufficiently credible and compelling, his claim would nonetheless fail because such a claim is only designed to allow for a merits-evaluation of a *habeas* claim that would otherwise be procedurally barred. *See Hyman*, 927 F.3d at 655 ("[T]he claim cannot itself afford [the petitioner] habeas relief from his state conviction. It can only open a gateway to federal review of an otherwise procedurally barred [*habeas*] claim that, if itself successful, could afford him relief.") (citing *Schlup*, 513 U.S. at 314). Here, regardless of whether Petitioner has a successful actual innocence claim, the Court has already considered all of Petitioner's other substantive *habeas* claims and has found them deficient, for the reasons discussed *supra*. Therefore, even if Petitioner had met the standard for actual innocence, he is still not entitled to federal *habeas* relief.

Finally, to the extent that Petitioner seeks to bring a freestanding innocence claim, the Court first notes that the United States Supreme Court has yet to hold that there is a freestanding federal constitutional claim of actual innocence. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009) ("Whether [a federal right to be released upon proof of actual innocence] exists is an open question. We have struggled with it over the years, in some cases assuming, *arguendo*, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet.") (citations omitted); *House*, 547 U.S. at 554–55 (declining to decide whether a freestanding actual innocence claim exists); *Herrera v. Collins*, 506 U.S. 390, 404 (1993) (finding that *habeas* petitioner who was not seeking to excuse procedural default was not entitled to relief based on actual innocence claim); *cf. McQuiggin*, 569 U.S. at 386 ("We hold that actual innocence, if proved, serves as a gateway through which a [*habeas*] petitioner may pass whether the impediment is a procedural bar . . . [or] expiration of the statute of limitations.").

Moreover, "[e]ven assuming *arguendo* the existence of a freestanding federal claim of actual innocence, the Supreme Court has suggested that the threshold showing for such a claim would be 'extraordinarily high.'" *Castellanos v. Kirkpatrick*, No. 10-CV-5075 (MKB), 2015 WL 7312908, at *8 (E.D.N.Y. Nov. 18, 2015) (quoting *Herrera*, 506 U.S. at 417). "This burden would require more than satisfying '*Schlup*'s gateway standard for obtaining federal review despite a state procedural default.'" *Clark v. Capra*, No. 14-CV-2507 (VB) (LMS), 2017 WL 4685298, at *9 (S.D.N.Y. June 22, 2017) (quoting *House*, 547 U.S. at 555 and referencing *Schlup v. Delo*, 513 U.S. 298 (1995)), *report and recommendation adopted*, No. 14-CV-2507 (VB), 2017 WL 4685104 (S.D.N.Y. Oct. 17, 2017). Since Petitioner's evidence does not satisfy this lower standard, it necessarily does not satisfy whatever this higher standard might be. *See id.* ("[P]etitioner would

have to show more than that 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'  Here, Petitioner cannot satisfy the *Schlup* burden [to excuse a procedural default] and, therefore, necessarily fails to satisfy the higher burden contemplated by *House*.") (quoting *McQuiggin*, 569 U.S. at 386); *DiMattina*, 949 F. Supp. 2d at 416 ("Despite its reluctance to recognize innocence as a ground for habeas relief, the Court nonetheless hinted that a successful innocence claim would, 'at the least . . . require[ ] more convincing proof of innocence than' what is required on a gateway claim.") (alterations in original) (quoting *House*, 547 U.S. at 555).

Accordingly, Plaintiff's claim of actual innocence—whether considered as a procedural vehicle or a freestanding substantive claim—is denied.

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpu*s pursuant to 28 U.S.C. § 2254 is denied.  Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also Middleton v. Att'ys Gen. of States of N.Y. and Penn.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate of appealability where petitioner has not shown that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks, ellipsis, and citation omitted).  Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: February 18, 2020
       Brooklyn, New York